**PARTIN'S ADM'R**

v.

**R. R. DAWSON BRIDGE CO., Inc.**

Court of Appeals of Kentucky.

March 12, 1954.

Fritz Kreuger, Russell Jones, Somerset, for appellant.

Smith & Blackburn, Somerset, for appellee.

MOREMEN, Justice.

On January 5, 1951, a portion of a bridge being constructed by R. R. Dawson Bridge Company across the Cumberland River fell and Kit Partin, Jr., a construction worker, fell with it and was killed. The administrator of his estate, J. J. B. Williams, appellant, brought an ordinary action alleging that the failure of appellee to furnish a safe place in which to work resulted in the death of Kit Partin, Jr., and damage was claimed in the sum of $35,000. Appellee's answer contained a traverse and an affirmative allegation that at the time of the accident the company had elected to operate under the terms of Chapter 342 of the Kentucky Revised Statutes and that decedent upon entering the services of the company as an employee had, on July 5, 1949, signed the Workmen's Compensation Register and had elected to work under the provisions of the Act.

Upon trial the facts proven were sufficient to justify the application of the doctrine of res ipsa loquitur. We believe it unnecessary to discuss those facts here because the sole issue, as the record now stands, is whether or not the trial court correctly directed a verdict for the appellee on the ground that it had been conclusively shown that appellant's decedent had elected to work under the terms of the Workmen's Compensation Act by signing the register.

The appellee company is a partnership and one of the partners, R. R. Dawson, testified that the company had accepted the terms of the Workmen's Compensation Act and he filed in evidence a certified copy of their acceptance with his testimony. It was the custom of the company to require all employees to sign the register before they commenced work. The original of the

employee's register was also produced and on it may be found the name of Kit Partin. Beside the name is the date of July 5.

The correctness of this signature was put in issue by Mr. and Mrs. Kit Partin, Sr., parents of the deceased, who testified that the writing that appeared in the register was not the signature of their son. Mr. and Mrs. Hermann Partin, uncle and aunt of the deceased, testified that their nephew was not in Pulaski County, the scene of the accident, on July 5, 1949, the date on which he was purported to have signed the register.

On the other hand, we are presented with the positive evidence of J. Q. Spurlin, superintendent of this particular job, who testified that the deceased signed the register on the first day he reported for work. He explained that he added the date later and may have been mistaken about it being July 5, but he was positive that it was the first day Partin worked on the job. Oscar Martin, a former employee of appellee, testified that he was present when Kit Partin, Jr. started to work and he saw him sign the register several minutes before he actually began working. The integrity of these witnesses was not questioned.

Mr. P. G. Kimball, cashier of the First National Bank, who was introduced as an expert, testified that the signature appearing on the register was similar to other specimen signatures that were introduced in the evidence but he failed to identify positively the register signature as being that of the deceased.

We have been rather liberal in permitting the introduction of non-expert opinion in cases involving the genuineness of a signature but both expert and non-expert testimony of this nature have been regarded as the weakest kind of evidence. Kentucky Traction and Terminal Company v. Humphrey, 168 Ky. 611, 182 S.W. 854; Pioneer Coal Company v. Polly, 208 Ky. 548, 271 S.W. 592; and Polley v. Cline's Ex'r, 263 Ky. 659, 93 S.W.2d 363.

We have also held in most instances that this type of evidence is not sufficient to overcome positive testimony of unimpeached witnesses. In connection with the question of the genuineness of a signature to a will, in Cline v. Wenger, Ky., 263 S.W.2d 91, we said:

"The contestant testified that in her opinion the signature on the will is not that of her brother. The only other evidence of forgery is the testimony of a banker and a handwriting expert. These two witnesses also expressed the opinion that the signature on the will is not that of the testator. This testimony is far from convincing and creates no more than a suspicion. Certainly it is not sufficient, under the circumstances here shown, to overcome the positive testimony of the four unimpeached witnesses who testified that the will was signed by the testator in their presence."

The court concluded that the trial court was correct in directing a verdict for the proponents of the will.

In a prior but recent case of Johnson v. Johnson, Ky., 257 S.W.2d 533, it was held that certain evidence, including the testimony of handwriting experts, was sufficient to sustain the verdict that the instrument offered for probate was not decedent's last will even though an attesting witness had testified positively that testator had signed the will. But in that case it was pointed out that the weighing of opinion evidence must be done in each case in relation to the testimony which it opposes and it was concluded there that the opinion testimony was sufficient under the circumstances to overcome the testimony of the lone witness. However, a consideration of all the evidence in this case will lead, we believe, any fair minded man to the undoubted conclusion that decedent actually signed the register. We are of opinion that the court correctly directed a verdict for appellee.

Judgment affirmed.